**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2011

Lyle W. Cayce
Clerk

No. 09-50769

ORTHODONTIC CENTERS OF TEXAS, INC.,

Plaintiff - Appellant,

v.

D.D.M. MICHAEL WETZEL et al.,

Defendants - Appellees.

Appeal from the United States District Court
for the Western District of Texas
No. 1:06-CV-626

Before STEWART, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

At issue is whether, under Texas law, Appellant Orthodontic Centers of Texas, Inc. (OCT) may pursue its equitable claims for unjust enrichment to recover monies paid to Appellee Michael Wetzel on an illegal contract. This court's recent decision in *Packard* dealt with the same issue, involving an illegal contract between the Orthodontic Centers of America (OCA) and a licensed dentist in Texas. *See Packard v. OCA, Inc.*, 624 F.3d 726, 730 (5th Cir. 2010). In *Packard*, the court held that, as a matter of Texas law, OCA could not pursue

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41004

its equitable claims to recover benefits conferred pursuant to an illegal contract. *Id*. We AFFIRM.

This appeal arises out of an illegal contract between Wetzel and OCT. On July 13, 1999, Wetzel and OCT entered into a Business Service Agreement (BSA), pursuant to which OCT agreed to provide Wetzel with certain services, such as administrative support and services, acquiring and maintaining equipment and furniture, leasing and maintaining office space for Wetzel, employing Wetzel's office staff, and billing and collecting from Wetzel's clients and insurance companies. The parties also entered into an Asset Purchase Agreement (APA), whereby Wetzel would deliver "good and marketable title to all of the assets, tangible and intangible, of or pertaining to or used at or in connection with the operations (collectively, the Assets) of [Wetzel's] orthodontic practice." Pursuant to its obligations under the APA, OCT was required to pay Wetzel an affiliation payment, in installments, over the course of four years. A day after OCT made its last scheduled escrow payment, Wetzel unilaterally terminated the contract. OCT contends that, after crediting amounts it had received during the life of the contract, against the amount of its payment to Wetzel, the latter retained a windfall of $1,017,691.

OCT brought suit against Wetzel in Texas state court, seeking specific performance of the BSA. OCT asserted breach of contract, tortious interference with contract, conversion, promissory estoppel and unjust enrichment claims. Wetzel answered, asserting, *inter alia*, that the "agreements forming the basis of Plaintiff's action are illegal and/or unenforceable in that the same violate the Dental Practice Act, V.T.C.A. Occupations Code § 251.001, et seq."

Two years later, OCT filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana. *In re OCA, Inc.*, No. 06-

No. 09-41004

10179 (E.D. La. Mar. 14, 2006).  OCT subsequently removed this case to the United States District Court for the Western District of Texas.

On December 12, 2008, a panel of this court held that several contracts similar to the contract at issue in this case were void for illegality under Texas law.  *See In re OCA, Inc.*, 552 F.3d 413, 422-23 (5th Cir. 2008).  Soon after that decision, Wetzel filed a motion for summary judgment.  Wetzel argued that the district court should dismiss OCT's non-contractual restitution claims because the finding of contractual illegality compelled it to apply the rule that a court will not aid either party to an illegal contract, but instead will leave the parties where it finds them.  OCT, in its response, explained that under the Texas Supreme Court's ruling in *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947), equitable claims survive a determination of contract illegality under two circumstances: (1) when the party seeking restitution is not *in pari delicto* and (2) when the parties are *in pari delicto*, but the public interest in ensuring that one party to the illegal contract is not unjustly enriched at the expense of the other outweighs the public interest in refusing to aid a wrongdoer.  The district court granted Wetzel's motion for summary judgment, holding that neither of the two *Lewis* exceptions applied in this case.

I

This court reviews the grant of a summary judgment motion *de novo*, applying the same standard that governed in the trial court.  *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).  In deciding whether fact issues exist, a court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Commerce & Indus. Ins. Co. v. Grunell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002).  Because this court's jurisdiction is predicated on the federal diversity statute, Texas substantive law

No. 09-41004

governs this dispute. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Under Texas law, parties to an illegal contract should generally be left where the court finds them. *See Woolsey v. Panhandle Ref. Co.*, 116 S.W.2d 675, 678 (Tex. 1938) ("If the contract has been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid . . . [t]he illegality constitutes an absolute defense."); *see also Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.) ("A contract to do a thing which cannot be performed without violation of the law violates public policy and is void. . . . In Texas, parties to a contract are presumed to be knowledgeable of the law. Accordingly, courts will generally leave parties as they find them." (internal citations omitted)).

Texas, however, does recognize two limited exceptions to this rule, which permit equitable claims of restitution in relation to an illegal contract. In *Lewis*, the Texas Supreme Court articulated these two exceptions: relief may be granted to (1) the party "who is not in pari delicto" and (2) in cases where the party is *in pari delicto* but public policy interests weigh in favor of allowing the claim to proceed. 199 S.W.2d at 151. This court has acknowledged that *Lewis* provides the controlling precedent when Texas law applies, and the question is whether a party can recover payments made pursuant to an illegal contract. *Packard,* 624 F.3d at 730; *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995).

The question of whether the Wetzel-OCT contract is illegal is undisputed. *See In re OCA*, 552 F.3d at 424. Therefore, OCT may proceed with its equitable claims only if one of the *Lewis* exceptions apply. We now turn to whether those exceptions are applicable in this case.

No. 09-41004

II

"Texas courts recognize that where parties to an illegal contract are not *in pari delicto*, the party least culpable may recover." *Villanueva*, 123 S.W.3d at 467. Generally, under Texas law, courts find that parties are not *in pari delicto* where one party had access to facts indicating that the contract was illegal and the party enforcing the contract did not. *See, e.g., Graham v. Dean*, 188 S.W.2d 372, 373 (Tex. 1945) (holding that where the illegality of the transaction depended on the existence of peculiar facts which were known to the defendant but unknown to the plaintiff, the parties are not *in pari delicto*); *Villanueva,* 123 S.W.3d at 467 ("Where one party is unaware of the true facts and believes the contract is lawful, the general rule that an illegal contract is unenforceable does not apply."); *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App. —Fort Worth 1992, writ denied) (holding that because both parties were aware of the facts surrounding their contract, they were *in pari delicto*).

OCT contends that Wetzel is more culpable because (1) Wetzel unilaterally terminated the contract the day after he received his last scheduled escrow payment under the APA, and (2) Wetzel, as a licensed dentist, is subject to heightened professional responsibility and ethics obligations under the Texas Administrative Code.

Although we find it disturbing that Wetzel terminated his contract the day after OCT made its last scheduled payment to him, our inquiry is limited, under Texas law, as to Wetzel's relative culpability at the time of the contract. Here, the district court held that, at the time of the contract, the parties were *in pari delicto* because OCT had failed to raise any "question of material fact as to Wetzel's culpability or knowledge of specific facts indicating the contract was

illegal."[1]  The district court also noted that "neither party suggests additional facts will be adduced at trial tending to prove that either party had special knowledge that the contract was illegal."  We agree.  There is no evidence in the record to suggest that Wetzel had knowledge of any  specific facts at the time of the contract indicating that the contract was illegal.   OCT also contends that Wetzel is more culpable because as a licensed dentist, he is subject to heightened professional responsibility and ethics obligations.  Specifically, OCT points to 22 Texas Administrative Code § 108.1(4):

> no dentist [shall] permit or allow himself, his practice of dentistry, his professional identification, or his services to be used or made use of, directly, or indirectly, or in any manner whatsoever, so as to create or tend to create the opportunity for the unauthorized or unlawful practice of dentistry by any person, firm, or corporation or for the practice of dentistry in violation of any provision of the Texas Dental Practice Act or any rule, regulation, or order of the Board.

OCT argues that Wetzel had an obligation to avoid a contractual commitment that definitely involved one of the parties in the unlicensed practice of dentistry; his duty to the public was to avoid any contract that might even "tend to create the opportunity" for the unlicensed practice of dentistry.  OCT further argues that a "licensed dentist is not entitled to rely on the fact that the legality of the contract is yet to be tested" because the language of Section 108.1 requires a licensed dentist to refrain from creating even the risk of an unlicensed party engaging in the practice of dentistry.

As this court already noted in *Packard*, "[w]here the contract is illegal because of statutory prohibition, the plaintiff is not *in pari delicto* if the statute

---

[1] Wetzel argues, based on documents excluded by the district court because they were not authenticated, that OCT is the more culpable party.  These documents are not part of the summary judgment record and will not be considered by this court.  *See, e.g.*, *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) (holding that documents submitted as summary judgment evidence must be authenticated).

No. 09-41004

*is for his protection.*" *Packard*, 624 F.3d at 735 (citation omitted). Here, the prefatory language of the statute, 22 Texas Administrative Code § 108.1, states that its purpose is to protect the public from the illegal practice of dentistry, not corporations who engage in the illegal practice of dentistry. *See* 22 Tex. Admin. Code § 108.1; *see also Packard*, 624 F.3d at 735. Therefore, there is no question that OCT was *in pari delicto* with Wetzel.

### III

Even if the parties are *in pari delicto*, courts will permit equitable claims for restitution to proceed if allowing those claims to proceed will advance the public interest. *See Lewis,* 199 S.W.2d at 151; *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009) ("[E]ven in situations where parties are found to be in pari delicto, under Texas law, 'relief will sometimes be granted if public policy demands it.'") (internal citation omitted). In reaching a decision as to granting or withholding relief, "the question [is] whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other." *Lewis*, 199 S.W.2d at 151. "The solution of the question depends upon the peculiar facts and the equities of the case, and the answer usually given is that which it is thought will better serve public policy." *Id* (internal citation omitted). "It is true that as between parties in pari delicto relief will be granted if public policy demands it. In such cases the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public; the guilty party to whom relief is granted being only the instrument by which the public is served. The relief is granted to discourage such transactions by others." *Wright v. Wight & Wight*, 229 S.W. 881, 882 (Tex. Civ. App.—El Paso 1921). The public policy inquiry is focused on the public's interest, not the parties. *Id*.

No. 09-41004

As this court discussed in *Packard*, the public's interest here is "the prevention of the unlicensed practice of dentistry." *Packard*, 624 F.3d at 736. This policy would not be served by allowing OCT, a corporation that engaged in the unlicensed practice of dentistry, to pursue a claim to recover money that it paid to do so. *See id.*

We recognize that in this situation, where both parties were equally culpable at the time of the agreement, one party, Wetzel, has been unjustly enriched at the expense of another, OCT. In this case, does the policy against assisting a wrongdoer, OCT, outweigh the policy against permitting unjust enrichment? We hold that it does. OCT was a sophisticated party that should have been aware of the risk that this agreement with Wetzel posed. As the district court noted, "the record in this case shows that Orthodontic Centers actively pursued its business model despite the known risks," and that it "benefits the public interest for companies that choose risky business strategies to bear the consequences when such strategies fail." More importantly, allowing OCT to pursue its claim would not discourage corporations like OCT from entering into agreements to practice unlicensed dentistry in the future. Admittedly, our decision may permit Wetzel to be unjustly enriched at OCT's expense, but no "higher right of the public" is served by allowing OCT to pursue its claims.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

8