*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# OPINION

No. 04-09-00465-CV

George **GEIS** d/b/a Rio Architects,
Appellant

v.

## COLINA DEL RIO, LP,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-07993
Honorable Michael P. Peden, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
   Karen Angelini, Justice
   Rebecca Simmons, Justice

Delivered and Filed:  May 4, 2011

OPINION WITHDRAWN; JUDGMENT AFFIRMED; MOTION TO PUBLISH GRANTED;
MOTION FOR REHEARING EN BANC DENIED AS MOOT

Appellant George Geis d/b/a Rio Architects ("Geis") appeals from a judgment requiring him to pay appellee Colina Del Rio, LP ("Colina") $881,958.00 in damages plus interest, attorney's fees, and costs in a suit involving an architectural contract. Colina sued Geis for rescission of the contract, claiming the contract was unlawful because Rio Architects failed to employ or associate with a licensed architect when the architectural plans were created. Alternatively, Colina sued for breach of contract, claiming the architectural services and plans

provided by Rio Architects were flawed and insufficient. A non-jury trial was held and judgment was rendered in favor of Colina on both theories of recovery. Geis appealed.

A panel of this court issued a memorandum opinion and judgment on July 21, 2010, affirming the trial court's judgment. Thereafter, Geis filed a motion for rehearing and a motion to publish the opinion. Both motions were denied by the panel. Geis then filed a motion seeking reconsideration of the denial of his motion to publish. Geis also filed a motion for rehearing en banc. In his post-opinion motions, Geis asserts our initial opinion "modifie[d] the existing rule that *in pari delicto* is a defense to breach of contract." Geis further asserts our initial opinion "ignored the possibility that *in pari delicto* would prevent Appellee[] from recovering on [its] breach of contract claim when it affirmed the judgment on breach of contract grounds without even discussing the *in pari delicto* defense."

On our own motion, we withdraw our opinion and judgment dated July 21, 2010, and substitute the following opinion and judgment to more fully address the defense of in pari delicto. Because appellant's motion for rehearing en banc addresses our initial opinion and not our substituted opinion, appellant's motion for rehearing en banc is denied as moot. Appellant's motion to publish is granted. The trial court's judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. The Villaje Del Rio Development Project

Geis owns Rio Architects, which is a sole proprietorship. Geis is a real estate developer; Geis is not an architect.

Geis became interested in developing real property located near downtown San Antonio, Texas, into a mixed-use residential, commercial, and retail center called Villaje Del Rio. Geis

formed Villaje Del Rio, Ltd. ("Villaje"), a limited liability partnership.[1] Villaje was the initial owner and developer of the Villaje Del Rio project.

In July 2002, Villaje signed a written contract with Rio Architects for architectural services. The contract required Rio Architects to prepare design phase documents as well as construction phase documents consisting of drawings and specifications setting forth in detail the requirements for the construction of the project. The contract also required Rio Architects to coordinate the work of structural, mechanical, electrical, and civil engineers; the surveyor; and the landscape architect. Under the contract, Rio Architects was to be paid 5.25% of the project's construction costs for its architectural services.

To fund the project, Villaje applied for a loan for nearly $27 million from Berkshire Mortgage Finance, Limited Partnership ("Deutsche Bank"). The loan was to be insured by HUD, which required review of the architectural plans to make sure they complied with HUD guidelines. During its initial review, HUD determined the architectural plans failed to comply with its guidelines. The architectural plans were revised and eventually passed review by Deutsche Bank. Thereafter, the loan was approved for closing. The loan closed on February 13, 2003, and Rio Architects was paid $881,958.00 for its architectural services.

Villaje hired a general contractor, Andres Holding Corporation, to oversee construction of the project. Andres began construction using the architectural plans created by Rio Architects. In June 2004, a dispute arose between Andres and Villaje over design changes, change orders, and the cost of those change orders. As a result, Deutsche Bank, HUD, Geis, and Andres met to discuss the plans, and they came up with more than one hundred mechanical, structural, and

---

[1] The partnership consisted of a corporate general partner, Villaje Del Rio Management Company, LLC and a limited partner, Geis. Geis was also the sole member and manager of Villaje Del Rio Management Company, LLC.

architectural changes to the plans developed by Rio Architects at a cost of over $500,000.00. Ultimately, Villaje fired Andres and construction came to a halt.

In December 2004, Deutsche Bank declared Villaje's loan in default, because, among other things, construction was not completed by the target completion date of December 13, 2004, and construction had ceased for more than twenty days. Deutsche Bank later accelerated the note on the loan and ultimately assigned it to HUD. HUD then sold the note to Colina. When Colina acted to enforce its rights under the note, Villaje filed a voluntary petition for bankruptcy. In the bankruptcy proceeding, the bankruptcy trustee auctioned off various Villaje assets. Colina, now a creditor, made a $100,000.00 "credit bid" for Villaje's claims against Geis and Rio Architects "not sounding in tort." The bankruptcy court signed an order approving Colina's credit bid.

### 2. Claims Filed Against Geis d/b/a Rio Architects

On May 25, 2007, Colina filed the underlying suit against Geis d/b/a Rio Architects. Colina's petition alleged it was pursuing claims against Geis d/b/a Rio Architects, which it had acquired by credit bid in the bankruptcy proceeding. Colina alleged two alternative causes of action. First, Colina alleged the contract between Rio Architects was fraudulent and unlawful based on Rio Architects's failure to register with the Texas Board of Architectural Examiners and its failure to employ or associate with a licensed architect when the plans, designs, and specifications for the Villaje Del Rio project were drafted. Based on the allegedly fraudulent and unlawful actions taken by Rio Architects, Colina sought rescission of the contract and the return of the $881,958.00 architectural fee that Villaje had paid to Rio Architects. Alternatively, Colina alleged Rio Architects breached its contract with Villaje by supplying plans, drawings, and specifications that did not comply with all applicable local and HUD requirements and did not

comply with architectural standards. Under its breach of contract theory, Colina sought damages caused by Rio Architects, "including but not limited to the architectural fees of $881,958.00, and other economic and actual damages."

In February 2009, the case was tried to the court. The witnesses testifying at trial included Colina's corporate representative, David Adelman, and Geis. Colina's expert witness, Jack McGinty, also testified. After hearing all of the evidence, the trial judge made a preliminary ruling in favor of Colina and requested briefing on damages and other issues prior to rendering final judgment.

Two days after the trial ended, but before the final judgment was signed, Geis filed a motion for leave to amend his pleadings to include the affirmative defense of limitations. Colina filed objections to the motion for leave, arguing it would be prejudiced by the requested trial amendment. A hearing was held on Geis's motion for leave to amend his pleadings and the motion was denied.

On May 11, 2009, the trial court signed a final judgment, answering all questions of law and fact in favor of Colina. The final judgment authorized Colina to recover actual damages from Geis in the amount of $881,958.00. Findings of fact and conclusions of law were filed, indicating Colina prevailed on both its unlawful contract and breach of contract theories of recovery.

After the final judgment was signed, but before the trial court's plenary power expired, Geis filed a motion to vacate the judgment, asserting Colina lacked standing because the evidence failed to show Colina actually acquired Villaje's claims against Geis and Rio Architects by completing the credit bid in the bankruptcy court. A hearing was held on the motion to vacate the judgment and the motion was denied. This appeal followed.

On appeal, Geis argues that Colina was precluded from recovering on either its unlawful contract claim or its breach of contract claim, and that the evidence was legally and factually insufficient to support the damage award. Additionally, Geis argues that the trial court should have granted his motion for leave to file a trial amendment adding the affirmative defense of limitations. Finally, Geis asks us to dismiss this cause because Colina lacked standing to sue.

## IN PARI DELICTO DEFENSE

The defense of in pari delicto requires Texas Courts, as a general rule, to decline to enforce illegal contracts when the contracting parties are equally blameworthy. In his first issue, Geis raised the defense of in pari delicto to Colina's unlawful contract theory of recovery. In his second issue, Geis raised defenses other than in pari delicto to Colina's breach of contract theory of recovery.[2] Based on this briefing, we considered Geis's in pari delicto defense as involving only the unlawful contract theory of recovery. At oral argument, Geis appeared to agree with this

---

[2] In his opening brief, Geis summarized his first two issues as follows:

> Colina cannot recover on its unlawful contract theory because it has no greater claim than Villaje Del Rio would have had. If Villaje Del Rio's contract with Geis d/b/a Rio Architects was unlawful, then Villaje Del Rio could not recover on it, and Colina (standing in Villaje Del Rio's shoes) likewise [cannot] recover. In Texas, unlawful contracts are unenforceable. There is a presumption that the parties to unlawful contracts are *in pari delicto*—equally culpable because they are equally aware of the illegality of the transaction. The trial court found that the parties were not *in pari delicto* because Geis d/b/a Rio Architects had superior knowledge to Villaje Del Rio. But it is nonsensical to argue that Geis d/b/a Rio Architects somehow concealed knowledge about this transaction from Geis as sole owner and partner of Villaje Del Rio. Geis d/b/a Rio Architects and Villaje Del Rio were *in pari delicto*, so this Court should leave the parties exactly as it found them.

> Likewise, Colina cannot recover on its breach of contract claim because Villaje Del Rio accepted the benefits of the contract even after it learned of what Colina now complains were deficiencies in the plans. Furthermore, Villaje Del Rio has already received the benefit of the $881,958 architect's fee it sought to recover in this lawsuit. Waiver, estoppel, laches, release, and ratification therefore prevent Colina from recovering on its breach of contract claim.

interpretation of his arguments and briefing.[3] As a result, our initial opinion did not address Geis's first issue, which raised the in pari delicto defense to the unlawful contract theory. Instead, we only addressed Geis's second issue, which raised defenses other than in pari delicto to the breach of contract theory. And, because of the way Geis briefed and argued the case, we did not address the in pari delicto defense as to the breach of contract theory. Upon overruling Geis's second issue, we upheld the judgment based on the breach of contract theory alone. *See* TEX. R. APP. P. 47.1 (requiring opinions to be as brief as practicable but to address every issue raised and necessary to final disposition of the appeal).

In his post-opinion motions, however, Geis asserts that our initial opinion could be construed as holding that the in pari delicto defense does not apply to breach of contract claims. Geis further asserts our initial opinion should have addressed the in pari delicto defense as to both the unlawful contract and the breach of contract theories. In the interest of justice, and to avoid any confusion regarding whether the in pari delicto defense applies to breach of contract claims, we will address Geis's first issue.

"The equitable defense of *in pari delicto*, which literally means, 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). Application of the in pari delicto defense, however, is not limited to a claim for equitable rescission. *See Villanueva v. Gonzalez*, 123

---

[3] At oral argument, the following exchange took place:

| | |
|---|---|
| Justice Angelini: | And the in pari delicto idea only applies to the first argument, not the second? Is that correct? |
| Geis's Counsel: | That is correct, Your Honor. |
| Justice Angelini: | They [Colina] could only recover for breach of contract, except for the other arguments you presented? |
| Geis's Counsel: | Yes, Your Honor. |

S.W.3d 461, 467 (Tex. App.—San Antonio 2003, no pet.) (upholding summary judgment on breach of contract claims when parties were in pari delicto and claims were based upon the same unenforceable agreement). As a general rule, Texas courts will neither aid in the enforcement of an illegal executory contract, nor relieve from an illegal contract, a party who has executed it. *Herrmann v. Lindsey*, 136 S.W.3d 286, 290 (Tex. App.—San Antonio 2004, no pet.). Instead, Texas courts leave the parties to such executed, unlawful contracts in the position in which they, by their voluntary acts, have placed themselves. *Id.* at 291.

There are exceptions to the general rule that Texas courts leave parties to an illegal contract where they find them. As the Texas Supreme Court has observed,

> The general rule that denies relief to a party to an illegal contract is expressed in the maxim, *In pari delicto potior est conditio defendantis*. The rule is adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public. In many cases relief is granted to the party who is not in pari delicto. It has been said that even where the parties are in pari delicto relief will sometimes be granted if public policy demands it. There is often involved, in reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other. The solution of the question depends upon the peculiar facts and the equities of the case, and the answer usually given is that which it is thought will better serve public policy.

*Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947) (citations omitted). Thus, the Texas Supreme Court has articulated two exceptions to the rule that courts will not aid parties to an illegal contract. *See id.*; *see also Orthodontic Ctrs. of Texas, Inc. v. Wetzel*, No. 09-50769, 2011 WL 365287, at *2 (5th Cir. Feb. 7, 2011) (analyzing Texas substantive law). First, a party to an illegal contract may recover when it is not in pari delicto. *Lewis*, 199 S.W.2d at 151. Texas courts have held that parties are not in pari delicto when one party had access to facts indicating that the contract was illegal but the party enforcing the contract did not. *Graham v. Dean*, 188 S.W.2d 372, 373 (Tex. 1945); *Villanueva*, 123 S.W.3d at 467. Additionally, Texas courts have

held that parties are not in pari delicto when a contract violates a statute that applies to only one of the contracting parties. *Am. Nat'l Ins. Co. v. Tabor*, 230 S.W. 397, 399 (1921); *New Boston Gen. Hosp., Inc. v. Tex. Workforce Comm'n*, 47 S.W.3d 34, 41 (Tex. App.—Texarkana 2001, no pet.) (op. on rehearing); *Oakes v. Guar. Ins. Co.*, 573 S.W.2d 899, 902 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.). Second, a party to an illegal contract may recover even when it is in pari delicto, when public policy interests weigh in favor of allowing the claim to proceed. *Lewis*, 199 S.W.2d at 151.

Here, Geis asserts that Villaje was in pari delicto because he was the only person authorized to act on behalf of Villaje, and his knowledge of the facts indicating that the contract was illegal had to be "imputed equally to both Rio Architects and Villaje Del Rio." For the following reasons, we reject this assertion.

The trial court found that Villaje did not have knowledge that Rio Architects was violating the statutes and regulations governing the practice of architecture. These findings, which are not specifically challenged on appeal, are supported by the record. The record shows Geis disavowed knowledge of many of the facts involving the illegal performance of the contract at trial. Geis testified that he lacked knowledge of the acts, omissions, and work performed by Rio Architects' employees at critical stages in the transaction. In particular, Geis testified he lacked knowledge of the acts and omissions of Robert Dafler, a design architect who was briefly employed by Rio Architects and who was found to have violated Texas Board of Architectural Examiners regulations with respect to this project. Specifically, Dafler was found to have unlawfully allowed use of his architect seal to approve plans over which he exercised no supervision or control.

Additionally, Geis advances no particular legal theory to explain why any knowledge he possessed must necessarily be imputed to Villaje. Geis simply asserts his knowledge must be imputed by virtue of the fact that he was the only person authorized to act on behalf of Villaje. However, even though Villaje was formed by Geis and he served as one of its partners, Villaje was a separate legal entity. Texas law provides that partnerships are legally distinct from individual partners. *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 63 n.9 (Tex. 2008). The same is true of a member or manager of a limited liability company and the company itself. *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.).

The record does not conclusively establish that both parties to this contract had access to the facts indicating the performance of the contract was illegal. The parties therefore were not in pari delicto.

The parties were not in pari delicto for another reason. As expressed by statute, Texas public policy requires the use of licensed architects. At the time the parties signed the contract in this case, Texas law provided,

> In order to safeguard life, health, and property, and the public welfare, and in order to protect the public against the irresponsible practice of the profession of architecture by properly defining and regulating the practice of architecture, no person shall practice architecture, as herein defined, within this State, after the effective date of this Act, unless he or she be a registered architect, as provided by this Act.

Act of May 26, 1989, 71st Leg., R.S., ch. 858, § 1, 1989 Tex. Gen. Laws 3836, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 5020 (repeal effective June 1, 2003) (current version at TEX. OCC. CODE ANN. §§ 1051.701, 1051.0015 (West Supp.

2010)).[4] This statute was clearly directed at providers of architectural services, rather than consumers of architectural services.

Here, Rio Architects was found to have violated administrative regulations governing the practice of architecture. *See, e.g.*, 22 TEX. ADMIN. CODE §§ 1.101; 1.103, 1.104; 1.121-.124 (Architect's Seal, Compliance and Enforcement). Like the aforementioned statute, these regulations were directed at providers of architectural services such as Rio Architects, not at consumers, such as Villaje. In light of theses statutes and regulations, Villaje was certainly less culpable than Rio Architects. *See Tabor*, 230 S.W. at 400 (holding an unlawful contract between insurer and insured was enforceable when the statute violated was intended to penalize insurers who violated the law); *New Boston Gen. Hosp.*, 47 S.W.3d at 40-41 (holding employee was not in pari delicto with employer when the statute violated did not apply to employee); *Oakes*, 573 S.W.2d at 902 (holding contracting parties were not in pari delicto when the statute imposed an obligation on only the party who acted without a license).

But even if we were to assume that the parties in this case were in pari delicto, the public policy interests here weigh in favor of allowing recovery. When parties are in pari delicto, relief will be granted if public policy demands it. *Lewis*, 199 S.W.2d at 151; *Wetzel*, 2011 WL 365287, at *4 (citing *Wright v. Wight & Wight*, 229 S.W. 881, 882 (Tex. Civ. App.—El Paso 1921, no writ)). In such cases, courts do not consider the guilt of the respective parties, but rather look to

---

[4] The law further provided,

> No person, firm, partnership, corporation or any other group or combination of persons shall use or attempt to use such prescribed seal, or any similar seal, or replica thereof unless the use is by and through an architect duly registered under the provisions of this Act. No architect duly registered under this Act shall authorize or permit the use of his seal by any unregistered person, firm, corporation, partnership or any other group or combination of persons without his personal supervision, and a violation hereof shall be grounds for cancellation of the registration certificate of any such offending architect.

Act of May 19, 1973, 63rd Leg., R.S., ch. 361, § 7, 1973 Tex. Gen. Laws 804, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 5020 (repeal effective June 1, 2003) (current version at TEX. OCC. CODE ANN. § 1051.701 (West Supp. 2010)).

the higher right of the public. *Wetzel*, 2011 WL 365287, at *4; *Wight*, 229 S.W at 882. In these instances, relief is granted to discourage similar transactions by others. *Wetzel*, 2011 WL 365287, at *4; *Wight*, 229 S.W at 882.

Here, even if Villaje had imputed knowledge of facts making the performance of the contract illegal, public policy considerations weigh in favor of allowing recovery. The evidence showed that the defects in the architectural plans were particularly egregious in this case. The plans developed by Rio Architects omitted fire suppression systems, fire sprinklers, and emergency exits; required bridges and balconies to encroach property lines; included parking garage ramps that exceeded the permissible slope allowable by the Americans with Disabilities Act; had multi-floor residential buildings with elevators that did not go to the ground level; called for incomplete and deficient structural bracing in the parking garage; included a faulty roof system that would be susceptible to water penetration; and had a deficient air conditioning and insulation system. Allowing recovery here advances the public interest by promoting compliance with architectural statutes and regulations, and by discouraging similar illegal transactions in the future.

As the Texas Supreme Court recognized in *Lewis*, the in pari delicto defense depends on "the peculiar facts and the equities of the case." Under the admittedly peculiar facts and equities of this case, Colina's recovery was not barred by the defense of in pari delicto. We, therefore, overrule Geis's first issue.

## REMAINING DEFENSES TO BREACH OF CONTRACT

In his second issue, Geis argues Colina could not recover for breach of contract because Villaje accepted the benefits of the contract even after it learned about deficiencies in the architectural plans that constituted a breach of contract. Geis also argues Colina could not

recover for breach of contract because Villaje waived its right to sue for breach of contract by failing to sue when it became aware of the deficiencies in the plans.

Geis relies on two cases in this section of his brief. First, Geis cites *Guerrero v. Hagco Bldg. Sys.*, *Inc.*, for the proposition that, in order to recover, a plaintiff in a rescission suit must return or offer to return any consideration which he has received under the contract. 733 S.W.2d 635, 637 (Tex. App.—San Antonio 1987, no writ). In *Hagco*, we held that the jury was entitled to find from the evidence that the plaintiffs failed to relinquish possession of real property because of evidence showing their continued use of the property and, therefore, we affirmed the trial court's judgment denying the remedy of equitable rescission. *Id.* at 638. Geis's reliance on *Hagco* in this section of his brief is misplaced. *Hagco* stands for the proposition that retention of benefits bars an equitable recovery for rescission of a contract, not that it bars a legal recovery for breach of contract. *See Tiger Truck, LLC v. Bruce's Pulp & Paper, LLC*, 282 S.W.3d 176, 183 (Tex. App.—Beaumont 2009, no pet.) (recognizing *Hagco,* which involved a suit for equitable rescission, was inapplicable to a suit for breach of contract). We, therefore, conclude Villaje's failure to return any benefits it received under the contract does not preclude Colina's recovery for breach of contract.

Second, Geis cites *In the Interest of C.T.*, for the proposition that Colina could not recover for breach of contract because Villaje waived this right. 749 S.W.2d 214, 215 (Tex. App.—San Antonio 1988, no writ). Geis argues "[t]he fact that Villaje Del Rio did not sue Geis d/b/a Rio Architects when it sued Andres and Deutsche Bank for their role in bringing construction to a halt demonstrates an intentional and voluntary relinquishment of a known right." Geis further argues all of his affirmative defenses, which included waiver, ratification, estoppel, laches, and release, "revolve around the fact that Villaje Del Rio waived its ability to

recover damages, if any, against Geis by failing to act after the period that it knew or should have known about the complaints Colina has raised with the plans." Although *In the Interest of C.T.* is a case involving waiver, it concerns the validity of a written relinquishment of parental rights; it does not address the issue urged by Geis that the failure to sue one party when one sues other parties amounts to a voluntary relinquishment of a known right. *See* 749 S.W.2d at 215-16. Thus, *In the Interest of C.T.* is distinguishable from the case before us.

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Enterprise-Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 835 (Tex. App.─San Antonio 1992), *writ denied per curiam*, 843 S.W.2d 476 (Tex. 1992). Because waiver is an affirmative defense, its elements must be proven by the party who pleads it. *See* TEX. R. CIV. P. 94. The elements of waiver are (1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Ordinarily, the existence of waiver is a question of fact. *Langley*, 111 S.W.3d at 156; *Hachar's*, 839 S.W.2d at 835. In determining if waiver has in fact occurred, courts examine the acts, words, or conduct of a party to determine if it "unequivocally manifested" an intention to no longer assert the right in question. *Hachar's*, 839 S.W.2d at 835; *see also Langley*, 111 S.W.3d at 156 ("Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances.").

Here, Geis had the burden to prove waiver at trial. The trial court found against Geis on all of his affirmative defenses, including waiver. On appeal, Geis argues that Colina was precluded from recovering under breach of contract because Villaje failed to file suit against him

when it sued the general contractor and the lender. In support of this argument, Geis contends the evidence at trial showed that the general contractor, Andres, had raised many of the same complaints that Colina raised in its suit, and that while construction was still under way, Villaje attempted to work with Andres to address these concerns. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001) (noting party attacking legal sufficiency of an adverse finding on an issue on which it had the burden of proof must show, as a matter of law, all vital facts in support of the issue; and party attacking factual sufficiency of an adverse finding on an issue on which it had the burden of proof must show the finding is against the great weight and preponderance of the evidence).

Nevertheless, Geis only argues that Villaje waived its breach of contract claim because it failed to sue him when it became aware of deficiencies in the architectural plans. Geis, however, does not direct us to any place in the record showing words, conduct, or actions on the part of Villaje that unequivocally manifest its intent to refrain from asserting its right to sue for breach of the architectural contract. We, therefore, conclude Geis has failed to demonstrate on appeal that the evidence establishes as a matter of law all facts vital in support of waiver, or that the trial court's adverse finding on waiver is against the great weight and preponderance of the evidence. We overrule Geis's second issue.

## DAMAGES

In his third issue, Geis argues the evidence is legally and factually insufficient to support the damages awarded. Here, Geis argues (1) the trial court should have reduced the damage award by $847,475.00; (2) the expert witness's opinion testimony does not support the damage award; and (3) this court should order a remittitur of the damage award.

The universal rule for measuring damages for the breach of contract is just compensation for the loss or damage actually sustained. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (quoting *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)). Breach of contract damages are generally designed to protect three interests: a restitution interest, a reliance interest, and an expectation interest. *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 247 (Tex. App.—San Antonio 1998, pet. denied). The purpose of reliance damages is to restore the status quo at the time before the contract was made. *Hart v. Moore*, 952 S.W.2d. 90, 97 (Tex. App.—Amarillo 1997, pet. denied). On the other hand, the purpose of expectancy damages is to restore the non-breaching party to the same economic position that it would have been in had the contract not been breached. *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.—Dallas 2004, pet denied).

Reliance damages are similar to out-of-pocket damages. *Hart*, 952 S.W.2d at 97. Out-of-pocket damages measure the difference between the value the buyer has paid and the value of what he has received. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *Brown Found. Repair & Consulting, Inc. v. Henderson*, 719 S.W.2d 229, 231 (Tex. App.—Dallas 1986, no writ) ("Damages may be established by proving the amount paid for repairs and the entire lack of value thereof."). Expectancy damages are similar to benefit-of-the-bargain damages. *See Qaddura*, 141 S.W.3d at 888-89. Benefit-of-the-bargain damages measure the difference between the value as represented and the value received. *Perry*, 945 S.W.2d at 817.

As a threshold matter, we note Geis tailors his argument and analysis in this section of his brief to benefit-of-the-bargain damages—the amount necessary to put Villaje in as good a position as if the contract had been performed. But the record shows the measure of damages

awarded by the trial court was out-of-pocket damages—the difference between the value Villaje paid and the value of what it received.

In a legal sufficiency review, we consider the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is more than a scintilla of evidence to support the trial court's finding, then the legal sufficiency challenge should be overruled. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). In a factual sufficiency review, we consider all the evidence supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

At trial, Geis testified he used most of the architectural fee received from Villaje to buy two letters of credit on behalf of Villaje that were required by the lender, Deutsche Bank. Later, when questioned by Colina's lawyer, Geis testified that according to his recollection the letters of credit were owned by him personally, not by Villaje. Geis further testified that he had signed a certification stating that no portion of the architect's fee had been or would be returned in any form, either directly or indirectly, to Villaje. Based on this equivocal evidence, Geis argues the trial court should have reduced the total damage award by $847,475.00, the amount he spent to purchase the letters of credit for Villaje.

Geis essentially argues the trial court erred by failing to grant him an offset. However, the right of offset is an affirmative defense. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). The party asserting offset has the burden of pleading this affirmative defense

and proving the facts necessary to support it. *Id*. Here, Geis faults the trial court for failing to allow him an offset; however, the record shows Geis never requested an offset in his pleadings. Because this offset was not requested in Geis's pleadings, this complaint is not preserved for appellate review. *See Zuniga v. Velasquez*, 274 S.W.3d 770, 774 (Tex. App.—San Antonio 2008, no pet.) (noting the affirmative defense of offset must be pled or it is waived); *Dal-Chrome Co. v. Brenntag Southwest, Inc.*, 183 S.W.3d 133, 144-45 (Tex. App.—Dallas 2006, no pet.) (holding appellate complaint about offset of damages was waived when it was not presented to the trial court).

Next, Geis argues the evidence in support of the damage award lacks the required reasonable basis and evidentiary support to be affirmed by this court. In asserting the evidence is legally and factually insufficient to support the damage award, Geis urges us to disregard the expert opinion testimony of McGinty, Colina's expert, as conclusory, complaining McGinty failed to describe how he reached his opinion or estimate the cost of correcting the deficiencies. With respect to the value of the plans provided by Rio Architects, McGinty offered the following testimony:

> It's my opinion that they probably have a negative value, and that's because I think it's going to cost more in architectural fees to correct the mistakes and restore the damage and get the project completed than that amount of $881,000. And that opinion is based on my experience of what it costs to do this kind of work in scope and nature.

Our review of the record shows McGinty expressly testified his opinions were based upon a personal inspection of the project; a review of the drawings, plans, and specifications for the project; a review of other documents and depositions; a review of relevant laws, codes, and regulations; and a review of architectural treatises. Thus, the record shows McGinty's testimony was not conclusory. *See State Farm Lloyds v. Hamilton*, 265 S.W.3d 725, 733 (Tex. App.—Dallas 2008, pet. dism'd) (holding expert's opinion testimony was not conclusory when it was

based on specific facts and analysis); *Gonzalez v. Salinas*, No. 04-06-00266-CV, 2007 WL 2042758, at *3 (Tex. App.—San Antonio 2007, no pet.) (holding expert's opinion was not conclusory when it was based on his education and experience, his inspection of the home, his evaluation of the foundation design, and his evaluation and testing of the soil). In addition, because McGinty testified the architectural plans provided by Rio Architects were worthless, he was not required to estimate the cost of correcting the deficiencies.

In his testimony, McGinty provided additional reasoning to support his opinion. McGinty testified that a practicing architect would not be able to take the plans provided by Rio Architects, clean them up, make revisions, stamp them, sign them, date them, and use them because there were "serious design deficiencies that have to be addressed" and "they're not easy questions." According to McGinty, these design deficiencies required (1) creating expensive mechanical air-conditioning systems due to exposed ducts in the ceiling space because the structure was too low; (2) modifying ramps because the slope of the ramps exceeded the allowable slopes under the law; (3) devising a prefabricated, weatherproof wall to be inserted behind a concrete wall; (4) designing a completely new roof system, possibly pitched; and (5) developing sun controls and awning shelters on windows facing the south and west in order to make the air conditioning function. In summarizing his opinion, McGinty stated, "There's a host of problems that are going to have to be addressed. The answers are not apparent without a great deal of work." Considering the evidence in the light most favorable to the judgment, we conclude there was more than a scintilla of evidence to support the trial court's finding that Rio Architects' plans and drawings "had a negative value" and "were worthless." We hold the evidence is legally sufficient to support the damage award.

As to the factual sufficiency of the evidence to support the damage award, Geis maintains there were many conflicts between the testimony of McGinty and Adelman, Colina's corporate representative. Geis argues the factfinder should have inferred that the architectural plans and services had some value based on Adelman's testimony. Adelman testified that the framing of the structure was about ninety-five percent complete when Colina first acquired an interest in Villaje. Adelman further testified the new owner had hired engineers and an architect to redesign the project and had made the decision to keep the foundation, the framing, and the shell of the buildings in place. Additionally, Adelman stated the new owner decided to make some aesthetic changes to enhance the marketability of the project. Adelman's testimony, however, did not speak directly to the value of architectural plans and services provided by Rio Architects. And, while a factfinder might have inferred from Adelman's testimony that the partially-constructed project had some value, we conclude the factfinder was not required to do so. Furthermore, McGinty testified directly about the value of the plans provided by Rio Architects, and gave the opinion that the plans provided by Rio Architects had a "negative value" because "it's going to cost more in architectural fees to correct the mistakes and restore the damage and get the project completed than that amount of $881,000.00." Considering all of the evidence in a neutral light, we conclude the trial court's damage award was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We hold the evidence is factually sufficient to support the trial court's damage award.

Additionally, Geis requests a suggestion of remittitur from this court. *See* TEX. R. APP. P. 46.3. An appellate court may order a remittitur of damages only if the evidence is factually insufficient to support the amount awarded, or if the amount is against the great weight and preponderance of the evidence. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). Because we

hold the evidence is factually sufficient to support the damage award, we deny Geis's request for a suggestion of remittitur. We overrule Geis's third issue.

MOTION FOR LEAVE TO FILE TRIAL AMENDMENT

In his fourth issue, Geis argues the trial court abused its discretion in denying his motion for leave to amend his pleadings to include the affirmative defense of limitations. Two days after the trial ended, Geis filed a motion stating, "[d]uring the trial, evidence was introduced by both sides, without objection, clearly indicating that this lawsuit is barred by the four-year statute of limitations set forth in Section 16.004 of the Texas Civil Practice & Remedies Code." Colina filed a written response opposing the motion for leave, arguing that the trial amendment was prejudicial on its face.

Generally, a trial court has no discretion to refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the proposed amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to it. *Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 665 (Tex. 1992); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); TEX. R. CIV. P. 63, 66. A trial amendment is mandatory if it is merely procedural in nature, such as when conforming the pleadings to evidence presented at trial. *Chapin*, 844 S.W.2d at 665; *Stephenson*, 16 S.W.3d at 839. Conversely, an amendment is not mandatory if it is substantive, that is, if it changes the nature of the trial. *Chapin*, 844 S.W.2d at 665; *Stephenson*, 16 S.W.3d at 839. If the trial amendment is not mandatory, the decision to allow or deny the amendment is within the sound discretion of the trial court. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994); *Stephenson*, 16 S.W.3d at 839.

Geis argues his trial amendment was mandatory because it was intended to conform the pleadings to the evidence presented at trial. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that the parties understood that the issue was in the case, and the other party fails to make an appropriate complaint. *Continental Homes of Texas, L.P. v. City of San Antonio*, 275 S.W.3d 9, 16 (Tex. App.—San Antonio 2008, pet. denied); *Johnson v. Oliver*, 250 S.W.3d 182, 186 (Tex. App.—Dallas 2008, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record for evidence of trial of the issue, not just for admission of evidence on the issue. *Continental Homes*, 275 S.W.3d at 16; *Johnson*, 250 S.W.3d at 186. Issues are not "tried" merely by receipt of evidence on the issue. *Continental Homes*, 275 S.W.3d at 16.

Here, Geis maintains the parties tried the issue of limitations by consent because the trial record shows the architectural contract was entered into on July 26, 2002, and was fully performed by February 13, 2003, when Rio Architects delivered the architectural plans and specifications under the contract. In support of this argument, Geis directs our attention to the architectural contract, closing documents, and loan settlement documents, which were admitted into evidence at trial. Nevertheless, the record shows these documents were admitted for other purposes, not for the purpose of trying the defense of limitations by consent. After reviewing the record, we conclude the parties were not under the impression that limitations was an issue in the case, and did not in fact try the issue of limitations by consent.

But even if we assume that the defense of limitations was actually tried by consent, the trial court could have properly concluded the proposed trial amendment was prejudicial on its face. A trial court has the discretion to refuse a trial amendment when the amendment asserts a new cause of action or defense, and therefore, is prejudicial on its face, and the opposing party

objects to the amendment. *Missouri Pacific R. Co. v. Buenrostro*, 853 S.W.2d 66, 70-71 (Tex. App.—San Antonio 1993, writ denied) (citing *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990)). And, when it appears that the new matter was known to the party seeking to file the amendment, or by reasonable diligence it could have been known by the party, the request should be denied. *Id.*

Geis relies on a Texas Supreme Court case, *Vermillion v. Haynes*, to support his argument. 215 S.W.2d 605, 609 (Tex. 1948). In *Haynes*, the supreme court held that the trial court erred in striking the appellant's request for a trial amendment to include a limitations defense. In finding an abuse of discretion, the supreme court emphasized that the respondents' objections to the trial amendment in no way suggested that they were surprised or unprepared to meet the issues raised by the trial amendment. *Id.*

The case before us is distinguishable from *Haynes*. Here, unlike the party objecting in *Haynes*, Colina explained in its written objection how the requested trial amendment would cause it surprise and prejudice. Moreover, based on the arguments presented in the objection, the trial court could have concluded that the addition of a limitations defense would reshape the nature of this case in a fundamental way. If Geis had asserted a limitations defense during the discovery period, Colina could have pleaded an exception to suspend or toll the statute of limitations such as fraudulent concealment, equitable tolling, or the discovery rule, and it could have conducted appropriate discovery. But because Geis waited to raise the defense of limitations until after trial, Colina was prevented from conducting relevant discovery and developing an appropriate response to a limitations defense. Thus, the trial court could have reasonably concluded that a trial amendment adding the defense of limitations at this late stage in the litigation would have been prejudicial to Colina. Additionally, the trial court could have

reasonably concluded that Geis in the exercise of due diligence should have anticipated and pleaded the affirmative defense of limitations.

We hold the trial court acted within its discretion in denying Geis's motion for leave to file a trial amendment. *See Blue Star Operating Co. v. Tetra Technologies, Inc.*, 119 S.W.3d 916, 920-21 (Tex. App.—Dallas 2003, pet. denied) (holding the trial court acted within its discretion in refusing post-verdict request for a trial amendment that was prejudicial on its face); *Buenrostro*, 853 S.W.2d at 70-71 (holding the trial court did not abuse its discretion in denying a request for a trial amendment injecting a new defense that would have prejudiced the plaintiff). We overrule Geis's fourth issue.

### STANDING

In his fifth issue, Geis argues this court should dismiss this cause for want of jurisdiction because Colina failed to prove its standing. Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). In other words, standing focuses on who may bring a cause of action. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Without standing, a court lacks subject matter jurisdiction to hear the case. *Lovato*, 171 S.W.3d at 849. The absence of standing may be raised by a plea to the jurisdiction, as well as by other procedural vehicles. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because standing is a component of subject matter jurisdiction, it cannot be waived and can even be raised for the first time on appeal. *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 679 (Tex. App.—San Antonio 1998, pet. denied). When reviewing the standing of a party for the first time on appeal, we construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing. *Id*.

To recover on an assigned cause of action, the party claiming the assigned right must prove not only that a cause of action existed that was capable of assignment, but also that the cause was in fact assigned to the party seeking recovery. *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.) (holding that when assignee did not offer into evidence the document showing the claims were assigned to him, assignee failed to establish his right to recover). Relying on *Balusek*, Geis argues that even though the trial evidence shows the bankruptcy court accepted Colina's credit bid of $100,000.00 to purchase Villaje's non-tort claims against Geis and Rio Architects, the trial evidence fails to show that Colina actually completed the transaction and purchased Villaje's non-tort claims against Geis and Rio Architects. Geis argues the bankruptcy order is no evidence that Colina actually completed the transaction and acquired Villaje's non-tort claims against him. Geis further argues Colina presented no additional evidence that it actually closed on and paid for its claims. As a result, Geis contends the record shows Colina had no standing to bring the underlying suit.

In *Balusek*, we reversed a judgment in favor of an assignee when the record showed the assignment was not admitted into evidence at trial. 137 S.W.3d at 725. We held that because the assignment was not admitted into evidence, the assignee did not meet his burden of showing a cause of action existed that was capable of assignment and that the cause of action was in fact assigned to him. *Id*. Here, unlike the situation in *Balusek*, the bankruptcy order authorizing the sale of Villaje's non-tort claims was admitted into evidence. This order provides, in pertinent part,

> The credit bid of Colina in the amount of $100,000.00 is the highest and best offer for the purchase of the Debtor's interest in all claims against George Geis, George Geis d/b/a Rio City, Villaje Management LLC, Goldbrick, Inc.; Rio Architects and Geis Construction not sounding in tort, save and except for claims arising under Chapter 5 of Title 11, United States Code (Asset 6), and the sale of such claims to Colina is hereby APPROVED.

The bankruptcy order does not require any further action to consummate the sale of these claims to Colina. In addition, the bankruptcy order expressly provides that it "will be effective upon entry." In addition, the testimony of Adelman and Geis indicates Colina actually acquired the non-tort claims of Villaje and had standing to bring these claims. In his testimony, Adelman expressly stated that the underlying lawsuit was filed after Colina purchased Villaje's non-tort claims against Geis and Rio Architects. Adelman's testimony on this issue is undisputed.

In addition, on cross-examination, Geis testified as follows:

Counsel:     Now, you understand that the claims being asserted by Colina here is for an asset that they purchased from the bankruptcy estate of Villaje; right?

Geis:        I understand they purchased a claim at the auction.

Counsel:     They purchased several claims at the auction; right?

Geis:        I thought you were asking about this particular claim.

Counsel:     Yes, sir, this particular one.

Geis:        Yes.
....
Counsel:     And how much did Colina pay or bid to acquire the claims that it purchased?

Geis:        I don't remember. I only remember this claim that you're asking me about. I don't remember the other claims.

Counsel:     Well, Colina [c]redit bid $100,000 to have the right to stand in Villaje's shoes and assert the non-tort claims against Rio Architects; right?

Geis:        Right.

We conclude the bankruptcy order, Adelman's testimony, and Geis's testimony are some evidence that Colina in fact purchased and acquired Villaje's non-tort claims against Geis and

Rio Architects. We, therefore, hold the evidence presented in this case shows Colina had standing to bring these claims. We overrule Geis's fifth issue.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice