# NO. 12-11-00236-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CABOT OIL & GAS CORPORATION, APPELLANT* | § | *APPEAL FROM THE 4TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *HEALEY, L.P., APPELLEE* | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Cabot Oil & Gas Corporation (Cabot) appeals the trial court's declaratory judgment entered in favor of Appellee Healey, L.P. (Healey). Cabot raises six issues on appeal. We affirm.

## BACKGROUND

This case involves three oil and gas leases pooled into multiple production units. Healey is the lessor. In 2008, Cabot acquired the leases and took over as operator of certain wells already existing on the production units. The leases each contain the following pertinent provisions:

> Lessee shall, during the drilling of any wells on the leased premises, furnish Lessor daily drilling reports, copies of all logs run, monthly production reports for the life of said well(s), copies of all reports and forms filed with the State regulatory bodies in connection with such wells, well locations, dates of completion and abandonment. Lessee shall also furnish Lessor copies of any title opinions or title reports which Lessee may obtain on the lease premises.
>
> . . . .
>
> Any breach by Lessee of any term, provision[,] or covenant in this lease shall be grounds for cancellation of this lease (together with any other remedies available to Lessor).

In late 2008, Healey determined that Cabot and its predecessor in interest, Enduring Resources, LLC (Enduring), had drilled twenty-one wells without providing it all of the information required by the data sharing provisions in the leases. In January 2009, Healey contacted Cabot, suggested that the leases had been breached, and requested that Healey be treated as a working interest owner in the units in which the leases had been pooled. In response, Cabot undertook to provide the sizeable amount of data in accordance with the leases' data provision terms.

On July 31, 2009, Healey filed suit alleging breach of contract and seeking a declaratory judgment that the leases had terminated and that Healey was an unleased cotenant with Cabot in the subject leases, units, and wells. Healey later amended its petition to include a request for an accounting from Cabot for the production revenues and reasonable expenses from the joint estate. Cabot filed an answer as well as a counterclaim seeking its own declaratory judgment that the leases were still valid. The matter proceeded to a jury trial. Ultimately, the jury found that Healey had effectively terminated the leases due to Cabot's breach. The trial court signed a judgment that declared (1) termination of the leases, (2) the amount of production revenue and production expense for each of the four gas units, and (3) Healey's specific mineral interest ownership percentage in each of the four units. The judgment further awarded Healey attorney's fees. This appeal followed.

### TRESPASS TO TRY TITLE ACTION VERSUS DECLARATORY JUDGMENT ACTION

In its first issue, Cabot argues that because a trespass to try title suit is the exclusive vehicle for adjudicating title to real property, the declaratory judgment rendered in Healey's favor was improper and should be reversed.

### Oil and Gas Leases and Their Relation to Title in Land

Oil and gas leases are unique. *See* **Ramsey v. Grizzle**, 313 S.W.3d 498, 502 (Tex. App.– Texarkana 2010, no pet.). In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. *See id.* In a typical oil and gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. *Id.* Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility

2

of reverter in the lessor/grantor. *Id.* The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate. *Id.* Where, as in the instant case, an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties. *See id.*

This recitation of Texas law illustrates that title to the mineral estate is at issue here. *See id.* at 503. Cabot's ostensible position is that it still holds the fee simple determinable, and the period of its noncompliance with the data provision requirements in the leases should not cause the lease to terminate. Healey maintains that Cabot's noncompliance was a violation of the leases' terms and, as a result, the mineral estates reverted to Healey.

## Trespass to Try Title

With an exception not applicable here, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property. *See* TEX. PROP. CODE ANN. § 22.001(a) (West 2000); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Koch v. Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App.–Austin 2008, pet. denied); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 211 (Tex. App.–Texarkana 2006, pet. denied). When the suit does not involve the construction or validity of deeds or other documents of title, the suit is not one for declaratory judgment. *McRae Exploration & Prod. Inc. v. Reserve Petro. Co.*, 962 S.W.2d 676, 685 (Tex. App.–Waco 1998, pet. denied).

For example, in a cessation of operations case, the San Antonio court pointed out that construction of the lease was not at issue in the case. *See BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 453 (Tex. App.–San Antonio 2008), *rev'd on other grounds*, 288 S.W.3d 430 (2011). Rather, the issues were whether the defendant (1) failed to engage in good faith drilling or reworking operations without a sixty day cessation and (2) committed fraud with regard to its activities. *See id.* The court determined that despite the manner in which the cause was pleaded, the underlying nature of the plaintiffs' suit was to obtain a determination of title to the leasehold and for further relief based on that determination. *See id.*

Similarly, in *Lile v. Smith*, the Texarkana court of appeals noted the distinction between a trespass to try title suit and a declaratory judgment action. *See Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.–Texarkana 2009, no pet.). There, the appellant complained that the trial court was

3

not authorized to enter a declaratory judgment action when title was at issue and the case was not a boundary dispute. *Id.* at 77–78. Noting that the proper vehicle was a trespass to try title suit, the court sustained the appellant's issue, reversed the trial court's judgment, and rendered judgment that the appellees take nothing. *See id.* at 79.

Moreover, well established authority supports the conclusion that the matter at hand is not properly authorized to proceed as a declaratory judgment. *Grizzle*, 313 S.W.3d at 504 (citing *Renwar Oil v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955)) (in venue context; to determine dispute concerning royalties, "the suit is essentially one for the recovery of land and to quiet title . . . even though cast as one for a declaratory judgment[;]" an adjudication that certain unitization agreements were void was conveyance in realty and, as to that matter, suit was an effort to remove cloud from title, even though alleged as effort to construe a contract). Texas courts have consistently characterized allegations concerning instruments relating to real property as suits concerning the title to land. *Grizzle*, 313 S.W.3d at 504; *see also Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764–65 (Tex. App.–Corpus Christi 1998, pet. denied) (dispute regarding overriding royalty interests necessarily hinged on determination of whether lease was in effect or terminated; since suit related to title to real property in Mississippi, Texas courts were without jurisdiction).

In sum, any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought. *Grizzle*, 313 S.W.3d at 504; *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex. App.– Texarkana 1991, no writ).

Here, both parties filed competing suits seeking a declaratory judgment. But since title to real property was at issue, a declaratory judgment action was not a proper vehicle to resolve the matter. *See Grizzle*, 313 S.W.3d at 504. Instead, because title was at issue here, we conclude that the proper vehicle was a trespass to try title action. *Id.*

**Preservation of Error, Attorney's Fees, and Evidentiary Sufficiency**

Cabot argues that because this suit was improperly prosecuted as a declaratory judgment action, attorney's fees should not have been awarded and we should render a judgment that Healey take nothing. Healey argues that Cabot failed to preserve this issue for appeal. *See Krabbe v. Andarko Petroleum Corp.*, 46 S.W.3d 308, 320–21 (Tex. App.–Amarillo, 2001, pet.

4

denied). In response, Cabot argues that it raised the issue in its motion for judgment notwithstanding the verdict and notes that, in **Krabbe**, the appellant did not raise the issue until after oral submission to the court of appeals. *Id*. at 321. Cabot argues that this postjudgment objection suffices to preserve error. We disagree.

Under Texas Rule of Appellate Procedure 33.1, to preserve error, a party must make a timely objection. TEX. R. APP. P. 33.1(a). To be considered timely, an objection must be specific enough to enable the trial court to understand the precise nature of the error alleged and interposed at such a point in the proceedings so as to enable the trial court the opportunity to cure the error alleged, if any. *Lake v. Premier Transp.*, 246 S.W.3d 167, 174 (Tex. App.–Tyler 2007, no pet.).

A plaintiff's petition defines the issues in the lawsuit. *BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 601 (Tex. App.–Tyler 2005, pet. denied). Along with other pleadings, the petition gives notice of the facts and legal theories of the case, guides the trial court in admitting evidence and in charging the jury, restricts the trial court in rendering the judgment, and forms the basis for appellate review. *See Erisman v. Thompson*, 667 S.W.2d 731, 733 (Tex. 1943); *Crain v. San Jacinto Sav. Ass'n*, 781 S.W.2d 638, 639 (Tex. App.–Houston [14th Dist.] 1989, writ dism'd); *Lindley v. Flores*, 672 S.W.2d 612, 614 (Tex. App.–Corpus Christi 1984, no writ).

Here, Healey's first amended petition set forth that it had entered into three oil and gas leases with one of Cabot's predecessors in title. These leases were attached as exhibits to Healey's petition, and each lease set forth the metes and bounds description of the land covered by the lease. Further, Healey prayed that the trial court (1) declare that the leases terminated, (2) declare that Healey is an unleased cotenant with Cabot in the leases, units, and wells referenced in the petition, and (3) order Cabot to account for payments received for production from the joint estate and the reasonable expenses related to the production of the same.

Based on the allegations and prayer in Healey's pleadings, we conclude that Healey gave adequate notice to Cabot that it was seeking a determination of which party had title to the

5

subject mineral estates. Because the ultimate relief sought focused on the issue of title, Cabot had notice from day one that Healey had filed an objectionable pleading.[1]

Under Texas Rule of Civil Procedure 90, every defect, omission, or fault in a pleading, either of form or of substance, that is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury shall be deemed to have been waived by the party seeking reversal on such account. *See* TEX. R. CIV. P. 90. Here, Cabot failed to object to Healey's pleading until after the trial court had entered its judgment. Moreover, Cabot pursued a counterclaim seeking a declaratory judgment that its leases had not terminated. Accordingly, we hold that Cabot failed to preserve error on the issue. Therefore, it cannot now complain that the trial court's determination of the issue and award of attorney's fees by declaratory judgment was erroneous. *See* TEX. R. CIV. P. 90; *see also* **Krabbe**, 46 S.W.3d at 321 (appellants did not preserve error on issue of whether attorney's fees erroneously awarded because suit was, in substance, a trespass to try title suit).

Cabot also contends that the evidence is insufficient to support that Healey had title to the property under the strict requirements of Texas Rule of Civil Procedure 783. However, Cabot's evidentiary sufficiency contention pertaining to the elements of Rule 783 is immaterial. Because it failed to lodge an objection pursuant to Rule 90, Healey was not prevented from prosecuting its case as one for declaratory judgment. Cabot's evidentiary sufficiency argument is narrowly cast and relates only to Healey's alleged failure to prove title in strict adherence to the elements of Rule 783. It does not argue that the evidence is insufficient to support any particular jury finding or declaration in the trial court's judgment.

Cabot's first issue is overruled.

### ADMISSIBILITY OF EVIDENCE OF ENDURING RESOURCES LLC'S DRILLING COSTS

In its second issue, Cabot argues that the trial court improperly excluded its Exhibit 37, which consisted of a business records affidavit and multiple records setting forth "Payout Calculations" created by its predecessor in title, Enduring. Cabot contends that these payout

---

[1] Healey's original petition prayed for the same relief save for an accounting of payments and expenses related from production on the subject estates. It also incorporated the three leases as exhibits.

calculations, which set forth Enduring's drilling and completion costs as well as its operating revenue and expenses, were admissible under the business records exception to the hearsay rule. Cabot further contends that this exhibit was vital to its case because it set forth Enduring's costs on each well, which were necessary to determine the amount by which to offset the revenue attributable to Healey's mineral interests.[2]  Thus, this information was relevant to the accounting Healey sought.

The trial court first considered Exhibit 37 as the subject of Healey's motion in limine. The trial court sustained the motion based on Healey's arguments that the exhibit (1) contained hearsay, (2) was an impermissible summary that failed to comply with Texas Rule of Evidence 1006, and (3) was inadmissible because Cabot had failed to demonstrate that the drilling costs incurred were reasonable and necessary.  At trial, the court sustained Healey's objection to the admissibility of the exhibit.  Cabot was permitted to make an offer of proof, which consisted solely of Exhibit 37.

**Standard of Review**

Evidentiary rulings are committed to the trial court's sound discretion. ***Bay Area Healthcare Grp., Ltd. v. McShane***, 239 S.W.3d 231, 234 (Tex. 2007).  We review a trial court's decision to admit or exclude evidence for an abuse of that discretion.  ***In re J.P.B.***, 180 S.W.3d 570, 575 (Tex. 2005).  A trial court abuses its discretion when it acts without reference to any guiding rules and principles. ***Garcia v. Martinez***, 988 S.W.2d 219, 222 (Tex. 1999).  We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. ***Owens–Corning Fiberglas Corp. v. Malone***, 972 S.W.2d 35, 43 (Tex. 1998); ***Oyster Creek Fin. Corp. v.***

---

[2] Enduring's costs are pertinent because it drilled a number of wells on the leases before Cabot acquired them.  Cabot summarized its theory of admissibility for Exhibit 37 as follows:

> An accounting was necessary because terminating the leases would make Healey an unleased cotenant in the units, meaning its cost-free royalty interests would be converted into cost-bearing interests. As a cotenant, Healey would not be entitled to benefit from a well in any of the units until the revenue from that well exceeded the reasonable and necessary costs of drilling, completing, and producing the well, a point referred to as "payout."

*See **Stable Energy, L.P. v. Newberry***, 999 S.W.2d 538, 543 n.2 (Tex. App.–Austin 1999, pet. denied) (recognizing payout is reached when costs of drilling and equipping well are recovered from production).

*Richwood Invs. II, Inc.*, 176 S.W.3d 307, 317 (Tex. App.–Houston [1st Dist.] 2004, pet. denied).

**Hearsay and Business Records Exception**

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Rule 803(6) of the Texas Rules of Evidence provides the following exception to the hearsay rule for business records:

> A . . . record . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

TEX. R. EVID. 803(6); *see In re E.A.K.*, 192 S.W.3d 133, 141 (Tex. App.–Houston [14th Dist.] 2006, pet. denied). The business records "shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7)." TEX. R. EVID. 902(10)(a).

In the instant case, the business records affidavit made by Enduring's custodian of records, Alex Campbell, precisely tracks the requirements in Rule 902(10). Furthermore, the record indicates the documents comprising Exhibit 37, which included Campbell's business records affidavit and Enduring's payout calculations, were filed with the clerk in excess of fourteen days prior to the commencement of trial. *See* TEX. R. EVID. 902(10)(a). Accordingly, we conclude that Exhibit 37 should not have been excluded on the basis of Healey's hearsay objection.

**Rule 1006**

Healey further objected that Exhibit 37 constituted an impermissible summary under Rule 1006. Rule 1006 states as follows:

> The contents of voluminous writings, recordings, or photographs, otherwise admissible, which cannot conveniently be examined in courts may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

*See* TEX. R. EVID. 1006; *see also* **Black Lake Pipe Line Co. v. Union Constr. Co.**, 538 S.W.2d 80, 93–94 (Tex. 1976) (establishing three-pronged test for admission of summaries).

Several courts have been confronted with an issue similar to the one now before us. In **Marquis Construction Co. v. Johnson Masonry**, 665 S.W.2d 514 (1983) (op. on reh'g), the court considered whether invoices were summaries of underlying business records that had not been produced. *Id.* at 515. Noting the supreme court's opinion in **Black Lake Pipe Line**, the court of appeals concluded that a business document may be admissible even though it represents a compilation of prior information. *See* **Marquis Constr.**, 665 S.W.2d at 515. The court expounded on its rationale as follows:

> There is a natural hierarchy of records in any business. A business person may make notes on a desk calendar or on phone message slips, and later refer to them in making out daily or weekly business records. Such records, in turn, may then be used to prepare monthly billing statements for submission to business clients. Each level of entry is a "summary" and is a consolidation of the prior written notations, but each level is, nevertheless, a business record, made in the regular course, by a person with personal knowledge, at or near the time of the act, event, or condition or reasonably soon thereafter. Thus an invoice, which is in itself a business record, should not be treated as a summary of business records, and it is admissible if it otherwise meets the test [for Rule 803(6)].

*Id.* The court held that the invoices were properly admitted into evidence. *Id.* at 516.

In **McAllen State Bank v. Linbeck Construction Corp.**, 695 S.W.2d 10 (Tex. App.– Corpus Christi 1985, writ ref'd n.r.e.), the court considered whether computer printouts that gave "an accounting summary/breakdown of charges for work performed" should be treated either as business records or summaries under Rule 1006. *Id.* at 16. Linbeck argued that the computer printouts were inadmissible because each was a summary of underlying business records that had not been made available to it. *See id.* The court distinguished the computer printouts at issue, noting that "we are dealing with two computer printout summary/breakdowns that, although each

is a summary of underlying business records (labor and materials records), are themselves business records." *Id.* "Therefore, the computer printouts were entitled to be treated as business records, and not as a summary of business records for trial purposes." *Id.* (citing *Marquis Constr.*, 665 S.W.2d at 515); *see Curran v. Unis*, 711 S.W.2d 290, 295 (Tex. App.–Dallas 1986, no writ) (income tax returns admissible despite fact that they were prepared from spreadsheets that were prepared from general ledger cards); *see also Avila v. State*, 252 S.W.3d 632, 636–37 (Tex. App.–Tyler 2008, no pet.) (in criminal context, Rule 1006 inapplicable to summary of underlying business records, which was itself a business record entitled to be treated as other business records).

In the instant case, Exhibit 37 consists of numerous "Payout Calculations" for the various wells Enduring drilled on the subject leases. These payout calculations set forth drilling and completion costs as well as operating revenues and expenses. As set forth above, Exhibit 37 consists of Enduring's business records. Therefore, we conclude that, as business records, the payout calculations that comprise Exhibit 37 should not have been excluded as summaries of business records compiled for trial purposes. *See Linbeck Constr.*, 695 S.W.2d 16; *Marquis Constr.*, 665 S.W.2d at 515; *see also Avila*, 252 S.W.3d at 636–37.

**<u>Proof That Costs Were Reasonable and Necessary</u>**

Healey further objected that Exhibit 37 was inadmissible because Cabot had not demonstrated that the costs set forth in the exhibit were both reasonable and necessary. For these costs to have any bearing on the accounting requested by Healey, and ultimately the amount attributable to Healey's mineral interests, Cabot was required to put on evidence that the costs were reasonable and necessary. *See Cox v. Davison*, 397 S.W.2d 200, 201 (Tex. 1965) (cotenant who produces minerals from common property without having secured consent of his cotenants is accountable to them on basis of value of minerals taken less necessary and reasonable cost of producing and marketing same); *cf. Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 113 (Tex. App.–San Antonio 2011, pet. denied) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980)) (party seeking right of offset has burden of proving facts necessary to support it).

The case law does not clearly characterize the requisite "reasonable and necessary" component of the payment formula with regard to how it pertains to the admissibility of the

10

costs. But by way of analogy, in the context of attorney's fees, the requirement that such fees be "reasonable and necessary" has been characterized as an "element" necessary to prove the attorney's entitlement to recover fees. *See, e.g., Crounse v. State Farm Mut. Auto Ins. Co.*, 336 S.W.3d 717, 720 (Tex. App.–Houston [1st Dist.] 2010, pet. denied) (discussing requirement that attorney's fees be both reasonable and necessary in context of requisite elements for recovery). Thus, it is not unreasonable to deduce that the requirement that the costs used to determine the payment due to Healey be reasonable and necessary is likewise an element of Cabot's offset rather than part of the predicate to admissibility. Accordingly, we conclude that Cabot was not required to demonstrate that the costs in Exhibit 37 were reasonable and necessary to secure the exhibit's admissibility. Rather, it was entitled to put on evidence of the reasonableness and necessity of Enduring's costs subsequent to Exhibit 37's admission into evidence.[3] The consequence for its failure to put on this proof before the close of evidence was the likelihood that the trial court would not include these figures to offset Enduring's revenue in the accounting of the money due to Healey.

In sum, because Exhibit 37 was a business record and not an impermissible summary under Rule 1006, it was admissible. Furthermore, its admissibility was not predicated on the proof that the costs contained in it were reasonable and necessary. Therefore, we hold that the trial court abused its discretion in excluding Exhibit 37.

**Harm Analysis**

Because we have held that the trial court improperly excluded Exhibit 37, we must determine whether the trial court's error caused Cabot harm. For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *see also* TEX. R. APP. P. 44.1(a)(1). In conducting this harm analysis, we review the entire record.

---

[3] Assuming arguendo that the "reasonable and necessary" aspect of these costs is part of the predicate to admissibility, Healey's objection could be characterized as raising an issue of relevance. In other words, Enduring's costs would not be relevant to the issue of the amount due to Healey unless they were shown to be "reasonable and necessary." But in this hypothetical scenario, the trial court would have been required to conditionally admit Exhibit 37 pursuant to the mandate of Texas Rule of Evidence 104(b).

Evidentiary rulings do not usually cause reversible error unless an appellant can demonstrate that the judgment turns on the particular evidence that was admitted or excluded. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995); *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 879 (Tex. App.–Houston [1st Dist.] 2006, no pet.). An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

As set forth previously, Enduring's costs, as set forth in Exhibit 37, are relevant to the issue of the amount due to Healey, but Cabot was required to put on evidence that the costs were reasonable and necessary. *See Cox*, 397 S.W.2d at 201; *cf. Geis*, 362 S.W.3d at 113. Cabot concedes that, as a direct result of Exhibit 37's not being admitted, it did not put on evidence that the costs were reasonable and necessary.

We acknowledge that the trial court's refusing to admit this exhibit placed Cabot in an awkward position with regard to its proving that the expenses in the excluded exhibit were reasonable and necessary. However, the record of the hearings on two pretrial motions elucidates the nature of Cabot's relationship with Enduring and raises the question of whether it would have been able to obtain the requisite evidence of the reasonableness and necessity of Enduring's costs.

In January 2011, the trial court held a hearing on Cabot's motion for continuance. At the hearing, Cabot stated to the court that Healey had informed it that it was no longer willing to accept the unsupported revenue and expense figures for Enduring that Cabot had provided. Cabot further noted that Healey's refusal to accept these figures would require it to go to Denver, Colorado to take a deposition from an Enduring representative to obtain evidence supporting these figures. Healey responded that it intended to hold Cabot to its burden of proof on the issue of expenses. The trial court granted Cabot's motion for continuance.

In March 2011, immediately prior to voir dire proceedings, the trial court conducted a hearing on Cabot's motion in limine. At the hearing, the focus turned to Healey's objections to Exhibit 37. Healey's counsel reminded the trial court that the cause had been previously continued so that Cabot could conduct discovery concerning Enduring's costs. Cabot's trial counsel elaborated on the matter as follows:

Your Honor, just for the Court's information, we talked to - - we were instructed not to call anyone at Enduring[, but] to talk to their outside counsel after the hearing, and we went to them on two or three phone calls, and they basically told us to take a hike; they weren't going to give us that information. I mean, we could have come here, I guess, and got letters interrogatory [sic] and gone to Denver and spent probably two or three months getting somebody to be deposed, and I don't know what we would have come up with, if we could have even done it in a timely manner.

It is apparent from this statement and its timing, given the imminency of trial, that Cabot's trial counsel had determined that Cabot would not acquire any further evidence from Enduring other than that which comprised Exhibit 37. Indeed, as previously noted, Cabot concedes in its brief that it did not put on evidence that Enduring's expenses set forth in Exhibit 37 were reasonable and necessary. The record confirms this fact. As a result, Cabot cannot meet its burden of demonstrating that the trial court's error is harmful because, without proof that these expenses were reasonable and necessary, Exhibit 37 was not controlling on a material issue. *See Mentis*, 870 S.W.2d at 16; *cf. Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex. App.–Tyler 2009), *aff'd*, 356 S.W.3d 390 (Tex. 2011) (evidence not related to amount of damages sustained under proper measure of damages is irrelevant and equivalent of no evidence). Accordingly, we hold that the trial court's exclusion of Exhibit 37 was not harmful to Cabot. Cabot's second issue is overruled.

## COURT'S CHARGE

In its third, fourth, and fifth issues, Cabot argues that the trial court's charge contains several errors. Texas Rule of Civil Procedure 277 requires a trial court to submit questions, instructions, and definitions to the jury as are necessary to enable the jury to render a verdict. *See* TEX. R. CIV. P. 277; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451–52 (Tex. 1997). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *Maxus Energy Corp. v. Occidental Chem. Corp.*, 244 S.W.3d 875, 883 (Tex. App.–Dallas 2008, pet. denied).

A trial court is required to submit a cause to the jury upon broad form questions whenever feasible, provided that the questions fairly submit the disputed issues raised by the pleadings and evidence for the jury's determination. TEX. R. CIV. P. 277; *see also Neuro–Developmental Assocs. of Houston v. Corporate Pines Realty Corp.*, 908 S.W.2d 26, 28 (Tex.

13

App.–Houston [1st Dist.] 1995, writ denied). A trial court has considerably more discretion when submitting instructions than when submitting questions. ***Perez v. Weingarten Realty Investors***, 881 S.W.2d 490, 496 (Tex. App.–San Antonio 1994, writ denied). Nevertheless, Texas Rule of Civil Procedure 277 states that the court shall submit such instructions "as shall be proper to enable the jury to render a verdict." ***Am.'s Favorite Chicken Co. v. Samaras***, 929 S.W.2d 617, 625 (Tex. App.–San Antonio 1996, writ denied).

The parties should submit the proposed charge to the trial court in "clusters" of related requests. *See, e.g.*, ***Lester v. Logan***, 907 S.W.2d 452, 453 (Tex. 1995). A single request with a large number of questions, instructions, and definitions is as weak as its most vulnerable part; when a request includes an objectionable question, instruction, or definition, the court can deny the entire request. *See, e.g.,* ***Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.***, 715 S.W.2d 658, 666–67 (Tex. App.–Dallas 1986, writ ref'd n.r.e.); ***Willis v. Maverick***, 760 S.W.2d 642, 647 (Tex. 1988) (trial court may refuse whole request if any part of request found to be defective). The party must tender the requests in substantially correct wording. *See* TEX. R. CIV. P. 278; ***Willis***, 760 S.W.2d at 647. If any part of the cluster is defective, the entire request is not substantially correct. *See* ***Perez v. Weingarten Realty Investors***, 881 S.W.2d 490, 495 (Tex. App.–San Antonio 1994, writ denied).

## Cabot's Proposed Question on Substantial Performance

In its third issue, Cabot argues that the trial court improperly excluded its proposed Question 1 on the issue of its substantial performance. Cabot's proposed question, complete with citations to authority,[4] stated as follows:

> **Question No. 1**
>
> Do you find from a preponderance of the evidence that Cabot substantially complied with the Oil and Gas Leases in providing lease information to Healey, LP?
>
> *Instructions*
>
> 1. "Oil and Gas Leases" means: (i) that certain Oil and Gas Lease dated August 10, 2005 by and between Healey, LP and Sarah Exploration Company covering 955.29 acres of land, more or less, in Rusk County, Texas; (ii) that certain Oil and Gas Lease dated May 31, 2007 by and between Healey, LP and Sarah Exploration Company covering 397.27 acres of land, more or less, in Rusk County, Texas; and (iii) that certain Oil and Gas Lease dated June 4, 2007 by and between Healey, LP and Sarah Exploration Company covering 645.19 acres of land, more

---

[4] We have omitted the numerous citations to authority from the quoted text below.

14

or less, in Rusk County, Texas.

2. Healey claims it has the right to terminate the leases based on Cabot's alleged breach of a "condition subsequent." A condition subsequent denotes an event which, if and when it happens, will give the grantor the right to terminate the grantee's estate by reentry.

3. "Because of their harshness in operation, conditions are not favorites of the law."

4. Substantial compliance with a condition subsequent is generally sufficient to prevent a forfeiture.

5. "Substantial compliance" means the performance of all important particulars[,] and any omissions or deviations from the agreement must be inadvertent and unknowing and not due to bad faith.

6. Temporary violations or non-compliance do not operate to effect a forfeiture permitting a re-entry, or the termination of an estate because of a special limitation.


Answer Yes or No.


Answer: _____


The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of its answers. TEX. R. CIV. P. 277. But the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition. *Id.* In order for a jury instruction to improperly directly advise the jury of the legal effect of its answers, it must instruct the jury how to answer each question in order for the plaintiff or the defendant to prevail. *See **H.E. Butt Grocery Co. v. Bilotto***, 985 S.W.2d 22, 24 (Tex. 1998).

In the instant case, the second instruction informs the jury that Healey believes it is able to terminate the leases by virtue of a condition subsequent. In concert, the fourth instruction informs the jury that substantial compliance with a condition subsequent can prevent a forfeiture. Had the trial court submitted Cabot's Question 1 as proposed, it would have instructed the jury that were it to find substantial compliance, Healey could not terminate the leases. Because Cabot's second and fourth instructions, read together, serve to directly advise the jury of the effect of its answer to Cabot's proposed Question 1, they were improper. Therefore, we hold

15

that the trial court did not abuse its discretion in refusing to submit Cabot's proposed Question No. 1.

**Cabot's Proposed Charge Questions on Waiver and Quasi-Estoppel**

In its fourth issue, Cabot argues that the trial court erred by merging a waiver and an equitable estoppel question because the evidence supported charging the jury separately on the issues of waiver and quasi-estoppel. The trial court's charge contains the following question, to which the jury answered "No":

Question 3

Was the failure of Cabot Oil & Gas Corporation to comply with the Oil and Gas Leases excused?

Failure to comply by Cabot Oil & Gas Corporation is excused if compliance was waived by Healey, L.P. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Failure to comply by Cabot Oil & Gas Corporation is excused if all the following circumstances occurred:

1. Healey, L.P.

    a.    by words or conduct made a false representation or concealed material facts,

    b.    with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts, and

    c.    with the intention that Cabot Oil & Gas Corporation would rely on the false representation or concealment in acting or deciding not to act; and

2. Cabot Oil & Gas Corporation

    a.    did not know and had no means of knowing the real facts and

    b.    relied to its detriment on the false representation or concealment of material facts.

Answer: _____

16

Cabot objected to the court's charge, and, in support of its argument that the theories of waiver and quasi-estoppel, rather than equitable estoppel, should be submitted separately, proposed the following charge questions:[5]

**Question No. 4**

Do you find from a preponderance of the evidence that Healey waived its right to terminate any of the leases?

*Instructions*

1. Forfeiture clauses, such as the lease termination provision here, are for the benefit of, and may be invoked or waived by, the lessor.

2. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. Under Texas law, the elements of waiver include: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence, and; (3) actual intent to relinquish the right, which we can infer from conduct.

3. A claim for a breach of contract can be waived through a variety of acts or omissions.

4. The right to forfeiture must be asserted and insisted upon at every stage, and the party claiming the right cannot take any step inconsistent with the right. Conduct inconsistent with a contract has the effect of waiving rights under the contract. A party's express actions as well as silence or inaction over a period of time long enough to show an intention to yield the known right is enough to show waiver.

5. Any action by a lessor knowing of a cause or right or forfeiture that affirms the existence of the lease and recognizes the lessee as his tenant, is a waiver of the right to declare or enforce the forfeiture. For example, a lessor was held to have waived its right to enforce a forfeiture provision of an oil and gas lease when it continued to accept royalties and procured the drilling of an offset well after the lessee took action allegedly triggering the forfeiture provision.

6. The signing of a division order counts as evidence of an intent to waive one's rights.

7. In the context of oil and gas leases, waiver or estoppel will result where the lessor fails to exercise a right of forfeiture within a reasonable time after the breach, where, after such a breach:

   - he or she permits the lessee to spend large sums in drilling and completing a well;

   - where he or she encourages the lessee to do the necessary drilling on the leasehold; or

---

[5] *See* n.4.

17

- where the lessor fails to take affirmative action to stop lessee from drilling.

8. Acceptance of royalties on a lease after its purported termination is evidence that a lessor waived its right to terminate the lease.

Answer Yes or No.

Answer: _____

. . . .

## Question No. 5

Do you find from a preponderance of the evidence that Healey is estopped from enforcing its right to terminate any of the leases?

*Instructions*

1. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit.

2. One who retains benefits under a transaction cannot avoid its obligations and is estopped to take an inconsistent position.

3. A contracting party cannot accept the benefit of a contract and disclaim its obligations.

4. Upon a claimed breach that gives rise to a forfeiture, the aggrieved party may either declare the contract terminated or allow that other party to continue performance under the contract—it cannot do both.

5. In the context of oil and gas leases, waiver or estoppel will result where the lessor fails to exercise a right of forfeiture within a reasonable time after the breach, where, after such a breach:

   - he or she permits the lessee to spend large sums in drilling and completing a well;

   - where he or she encourages the lessee to do the necessary drilling on the leasehold; or

   - where the lessor fails to take affirmative action to stop lessee from drilling.

Answer Yes or No.

Answer: _____

A jury instruction is proper when it assists the jury. *See **Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.**,* 323 S.W.3d 322, 342 (Tex. App.–Beaumont 2010, pet. denied).

18

Anything that does not aid the jury in answering the jury questions submitted, regardless of how interesting or otherwise relevant to the case, must be excluded from the charge. *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex. App.–Dallas 1993, no writ). The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 655 (Tex. App.–Dallas 2002, pet. denied). We again note that the court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of its answers. *See* TEX. R. CIV. P. 277. But the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition. *See id*.

In the instant case, based on our review of the record, we cannot conclude that the litany of instructions accompanying Cabot's proposed Questions 4 and 5 was necessary to clarify issues for the jury. While some items, such as the definition of the terms "waiver" and "quasi-estoppel" were not objectionable by themselves, the trial court was within its discretion to refuse the submission if it found any part of the request defective. *See Willis*, 760 S.W.2d at 647.

Based on our reading of these two proposed questions, we conclude that, with each ensuing instruction, there was an increased likelihood that the answer Cabot desired—that Healey had waived his right to forfeiture and was barred by quasi-estoppel from terminating the leases—was being suggested to the jury. Furthermore, when taken together, Instructions 1, 4, 5, 6, 7, and 8 to Cabot's proposed Question 4 and, similarly, Instructions 2, 3, 4, and 5 to its proposed Question 5 amounted to a comment on the weight of the evidence. Additionally, however interesting some of these instructions might be to those familiar with the law, they were more likely to confuse the jury than to assist it, and did not serve to submit the issues to the jury logically, simply, and clearly. *See Rosell*, 89 S.W.3d at 655. Therefore, we hold that the trial court did not abuse its discretion in refusing to submit them. Cabot's fourth issue is overruled.

**Waiver and Estoppel - Healey's Exercising Its Right of Reentry within a Reasonable Time**

In its fifth issue, Cabot argues that the trial court erred by refusing to give either a question or an instruction on waiver based upon Healey's untimely decision to reenter the leases. In its brief, Cabot cites *Lawyers Trust Company v. City of Houston*, 359 S.W.2d 887, 891 (Tex. 1962), in support of the proposition that failure to reenter in a timely manner is "simply a species

of estoppel," requiring some form of reliance.[6] The trial court submitted the affirmative defenses of waiver and equitable estoppel in Question 3 of its charge.

Initially, we note that Cabot offers no argument on appeal concerning why the waiver and equitable estoppel question submitted by the trial court in Question 3 was insufficient and why a separate question for this "species" of estoppel, such as the one it submitted, was warranted. *See* TEX. R. APP. P. 38.1(i).

We next consider Cabot's objections to the court's charge. At the charge conference, Cabot objected to Question 3 as follows:

> Cabot objects to Question 3 of the charge for several reasons. First, it's confusing. It has two questions. Paragraph 2 of Question 3 is an instruction on waiver and specifically says that waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming that right. However, the next paragraph doesn't include the word "estoppel" or doesn't give the jury any indication that it's answering two questions.
>
> It will lead the jury to believe that waiver is not only an intentional surrender of the known right or an intentional conduct inconsistent with claiming that right, but it will also lead the jurors to believe that they must also find that waiver also includes, number one, by Healey, words or conduct - - that they made a false representation of concealed or material fact. And the rest of the elements here that apply to estoppel, by combining estoppel and not calling it that, and merely putting it below waiver all in one question confuses the jury as to the elements of waiver and totally obscures the affirmative defense of estoppel.
>
> . . . .
>
> And secondly, the Charge is incorrect because it submits a question of equitable estoppel when the facts support that Cabot has pled quasi-estoppel, which are different elements.

To preserve error in the charge, the party must make objections to defective submissions in the court's charge or submit written requests for additional questions, instructions, or definitions that are omitted from the charge. *See* TEX. R. CIV. P. 273. Under the rules relating to the charge, objections and requests are not interchangeable. *See id.* But, ultimately, the singular test for preservation of error is whether a party made the trial court aware of the complaint,

---

[6] "A waiver of a breach of a condition subsequent may be presumed after a reasonable lapse of time has occurred without any assertion of right by the grantor under the condition. But, as said in 4 Thompson on Real Property, Section 2123, p. 668, it is incumbent upon the grantee to allege and prove such lapse of time." *Lawyers Trust Co.*, 359 S.W.2d at 891. "It is true that delay in exercising the right of re-entry coupled with proof that the grantee was misled by such delay and as a result changed his position by making improvements on the property or investing money in it, then it can be said that the grantor has waived his right of re-entry and is estopped from asserting his claim of the right of forfeiture." *Id.* at 891–92.

20

timely and plainly, and obtained a ruling. *See State Dept. of Hwys. & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

In the instant case, it is apparent from the record that Cabot recognized that Question 3 of the court's charge submitted the affirmative defenses of waiver and equitable estoppel. Despite its objections to combining these two defenses in one question, however, Cabot failed to make an objection to the trial court related to Question 3 that would cause the trial court to understand that it wanted it to instruct the jury on the particular "species" of waiver or estoppel pertaining to Healey's alleged failure to reenter in a timely manner. Moreover, Cabot's objection that Question 3 should submit the issue of quasi-estoppel rather than equitable estoppel likely caused confusion of its position on the issue since it tended to foreclose the notion that Cabot intended to submit any estoppel theory other than quasi-estoppel.

Finally, Cabot's proposed separate question on this particular "species" of waiver or estoppel pertaining to Healey's alleged failure to reenter in a timely manner does not serve as a request for a separate instruction on that issue which could be applied to Question 3 of the court's charge. *See Willis*, 760 S.W.2d at 647.

In sum, Cabot has made no argument on appeal in support of submitting a separate question on this issue. *See* TEX. R. APP. P. 38.1(i). Further, Cabot's objection to the court was insufficiently plain to make the trial court aware of the complaint it now raises. *See Payne*, 838 S.W.2d at 241. And, finally, Cabot failed to submit a proposed instruction in substantially correct form for Question 3 in the court's charge. Cabot's fifth issue is overruled.

## EXCLUSION OF DRY HOLE COSTS

In its sixth issue, Cabot argues that the trial court erred in excluding the costs of the Birdwell Gas Unit #1 Well (Birdwell #1), a dry hole, from the judgment because the undisputed evidence demonstrated that data from that unsuccessful well aided development of the unit.

Healey initially responds that the issue of whether to include costs associated with Birdwell #1 in the payout calculation was determined by the trial court rather than the jury and that Cabot failed to request findings of fact and conclusions of law. When no findings of fact are requested or filed, the trial court's judgment implies all findings necessary to support it. *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belgium, N.V. v.*

*Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When a reporter's record is filed, the implied findings are not conclusive, and an appellant may challenge them for both legal and factual sufficiency. *Sibley*, 111 S.W.3d at 62; *BMC Software*, 83 S.W.3d at 795. Here, we interpret Cabot's contention as one of legal sufficiency of the evidence supporting the expense figure for the Birdwell Gas Unit in the payout calculation in the trial court's judgment.

**Standard of Review**

If a party with the burden of proof[7] challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a "matter of law" challenge, we first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.* We will sustain the issue if the contrary proposition is conclusively established. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* at 827. The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, we must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id.* If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to disregard in a way that favored the findings. *See Canal*, 238 S.W.3d at 557 (citing *City of*

---

[7] As set forth previously, Cabot bore the burden of proof on any costs it sought to use to offset the amount due Healey. *See Cox*, 397 S.W.2d at 201 (cotenant who produces minerals from common property without having secured consent of his cotenants is accountable to them on basis of value of minerals taken less necessary and reasonable cost of producing and marketing same); *cf. Geis*, 362 S.W.3d at 113 (citing *Brown*, 601 S.W.2d at 936 (party seeking right of offset has burden of proving facts necessary to support it).

*Keller*, 168 S.W.3d at 820). A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Canal*, 238 S.W.3d at 557 (quoting *City of Keller*, 168 S.W.3d at 819–20).

Moreover, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 821). Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

## Proof of Costs of Dry Hole to Offset Payout

Each cotenant may enter upon the premises for the purpose of exploring for oil and gas and may drill and develop the premises. *Willson v. Superior Oil Co.*, 274 S.W.2d 947, 950 (Tex. Civ. App.–Texarkana 1954, writ ref'd n.r.e.). As set forth previously, a producing cotenant must account to a nonconsenting or nonproducing cotenant for his pro rata share of net profits, i.e., the market value of the oil or gas produced, less necessary and reasonable expenses incurred in producing and marketing the same. *See id.* However, absent a joint agreement, a cotenant seeking to produce does so at its own risk because it has no right to reimbursement from its nonconsenting or nonproducing cotenants for drilling costs associated with drilling a dry hole. *See id.*

Recognizing this longstanding rule, Cabot urges us to adopt a more moderate approach recently embraced by the San Antonio court of appeals in *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537 (Tex. App.–San Antonio 2011, no pet.). There, the court declined to conclude that drilling costs of an unprofitable well were "always or never" recoverable when a lease terminates. *See id.* at 564. Rather, the court concluded that the "equitable nature of such claims must turn on the equities in each case." *Id.* Ultimately, the court held that the trial court did not abuse its discretion in awarding unpaid net revenues

calculated as "gross revenues less reasonable and necessary expenses[, including expenses from unprofitable wells,] beneficial to the Subject Acreage." *Id.* at 565–66; *see also* ***Wagner & Brown, Ltd. v. Sheppard***, 282 S.W.3d 419, 426 (2008) ("As oil and gas wells are improvements to real property, the same rule applies to them: one who drills a well in good faith is entitled to reimbursement. This rule applies even if an operator's lease is not valid, so long as the operator believed in good faith that it was. Similarly, a co-tenant who drills without another co-tenant's consent is entitled to reimbursement.").

In the instant case, it is unnecessary for us to decide whether to follow the traditional approach as set forth in ***Willson*** or the moderate approach employed in ***Prize Energy***. Even if we agreed with Cabot that the ***Prize Energy*** approach should have been applied to the case at hand, Cabot still was required to prove that the costs associated with Birdwell #1 were reasonable and necessary. *See **Prize Energy***, 345 S.W.3d at 565–66. Cabot has not cited in its brief, nor has our review of the record uncovered, any evidence specifically indicating that any of the costs associated with this well were reasonable and necessary.

Cabot makes reference to Cynthia Rose's testimony that the information obtained from drilling Birdwell #1 benefitted the cotenancy by providing valuable reservoir information that led to the drilling of two additional successful wells. However, Rose's testimony, while supportive of the benefit provided by the information obtained from drilling this well, does not support that the costs related to the well were both reasonable and necessary. Moreover, the parties stipulated to the reasonable and necessary costs of the Birdwell Gas Unit as $14,285,410, the same amount that the trial court used in calculating Healey's proportionate share of net profits in its judgment. However, in our review of the record, we could not locate any stipulation that the costs associated with Birdwell #1, which were not included in the previous stipulation, were reasonable and necessary. Accordingly, since Cabot failed to put on proof that the costs associated with Birdwell #1 were reasonable and necessary, it did not conclusively prove all vital facts in support of its affirmative defense of offset with regard to this well. *See **Francis***, 46 S.W.3d at 241. Therefore, we hold that the trial court did not abuse its discretion in refusing to include the costs associated with Birdwell #1 in its calculation of Healey's proportionate share of net profits in the judgment. Cabot's sixth issue is overruled.

24

## DISPOSITION

Having overruled Cabot's first, second, third, fourth, fifth, and sixth issues, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice


Opinion delivered March 28, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**MARCH 28, 2013**

**NO. 12-11-00236-CV**

**CABOT OIL & GAS CORPORATION,**
Appellant
V.
**HEALEY, L.P.,**
Appellee

Appeal from the 4th Judicial District Court

of Rusk County, Texas. (Tr.Ct.No. 2009-235)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **CABOT OIL & GAS CORPORATION,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*